**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JUANITA OMORUYI and MICHAEL STRANGE, individually and on behalf of all other similarly situated persons,<br><br>Plaintiffs,<br>v.<br><br>GUARANTEED RATE, INC.,<br><br>Defendant. | No. 10-cv-6928<br><br>Judge Amy St. Eve<br><br>Magistrate Geraldine Soat Brown |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT**

Plaintiffs Juanita Omoruyi and Michael Strange ("Plaintiffs"), individually and on behalf of two classes of similarly situated persons, request that the Court enter an order finally approving the Settlement Agreement (the "Settlement" or the "Agreement") between Plaintiffs and Defendant Guaranteed Rate, Inc. ("Guaranteed Rate"). The parties' proposed Order is attached hereto as Exhibit A and will be submitted to the Court in accordance with procedure.

This case was filed on October 27, 2010 and originally asserted claims under the Fair Labor Standards Act, 29 U.S.C. § 207 (a) (1) ("FLSA") and common law claims for unjust enrichment. *Strange v. Guaranteed Rate, Inc.*, No. 10 CH 46445, was filed in the Circuit Court of Cook County and asserted claims under the Illinois Wage Payment and Collection Act, 820 ILCS § 115/9 ("IWPCA") and common law claims for unjust enrichment. Plaintiffs' Second Amended Complaint (Doc. 54) brought both sets of claims under this Court's jurisdiction in order to facilitate settlement. After extensive negotiations, the parties have achieved a Settlement which addresses and balances the positions of Plaintiffs, the Classes, and Defendant. Plaintiffs request that this Court approve the Settlement.

**I.      Preliminary approval and dissemination of notice.**

After a hearing on Plaintiffs' Motion for Preliminary Approval of Class Action Settlement Agreement and Notice to the Settlement Classes (Doc. 52), on July 12, 2011, the Court issued an Order of Preliminary Approval (Doc. 56).

In accordance with the Agreement, the parties and Kurtzman Carson Consultants, LLC (the "Settlement Administrator") caused Class Notice and Claim Forms to be disseminated to the Classes by first-class mail by August 2, 2011. *See* Declaration of Katie Horton, ¶¶ 5-12 (attached as Exhibit B); Declaration of Charles Bachtell, ¶¶ 3-9 (attached as Exhibit C). The Notice informed the Classes that "opt-out" requests and objections to the Settlement were due on September 13, 2011. No Class Members opted out or objected. The parties filed a Joint Motion to Disseminate Additional Notice and Extend Related Opt-Out and Objections Deadlines (Doc. 57), which the Court granted (Doc. 59). Supplemental Notice was mailed to eight Class Members on September 27, 2011, with a deadline for opting out or objecting of October 6, 2011. No Class Members opted out or objected as a result of the Supplemental Notice. The favorable response by the Class Members supports approval of the Settlement.

**II.     Background and summary of the Settlement.**

Plaintiffs' Second Amended Complaint asserted claims against Guaranteed Rate alleging they failed to properly compensate employees for overtime and made unlawful deductions from employees' wages to cover "marketing costs," as well as charging certain loan officers for information about potential customers ("leads"), treating these leads as a discretionary "benefit" to employees, rather than the cost of doing business for Guaranteed Rate.

Through extensive negotiations, including a formal mediation session under the guidance of the Hon. Robert Boharic (Ret.), Plaintiffs and Guaranteed Rate reached an agreement to settle this controversy on a class-wide basis. The Settlement's principal terms are as follows:

A. **Certification of Classes.** The parties stipulated to, and the Court approved, conditional certification of two Settlement Classes solely for settlement purposes pursuant to Fed. R. Civ. P. 23 (a) and (b) (3) (Doc. 56). The FLSA Class is defined as follows:

> All loan officers with the title Direct Mortgage Consultant and employees with equivalent job duties who worked for Guaranteed Rate at any time between October 26, 2007, and the Notice Date.

The State Settlement Class is defined as follows:

> All loan officers with the title Direct Mortgage Consultant and employees with equivalent job duties who worked for Guaranteed Rate at any time between June 1, 2007, and the Notice Date.

B. **Class Counsel and Class Representatives.** The Court appointed Plaintiffs Omoruyi and Strange as the Class Representatives, and appointed Richard J. Doherty, Esq. of the law firm of Bock & Hatch, LLC and J. Mark Moore, Esq. (*pro hac vice*) and H. Scott Leviant, Esq. (*pro hac vice*) of the law firm Spiro Moss, LLP as Settlement Class Counsel.

C. **Monetary relief available to the Class Members.** Guaranteed Rate must maintain a Claim Fund in the amount of five hundred ninety thousand dollars ($590,000.00). Each Claiming FLSA Settlement Class Member will be entitled to a cash payment of $50.00 for each four-week period that the claimant was employed by Guaranteed Rate. Each Claiming State Settlement Class Member will be entitled to a cash payment of $17.00 for each four-week period that the claimant was employed by Guaranteed Rate. If the total amount of Approved Claims exceeds the amount of the Claim Fund, each Class Member will receive a pro rata share of the amount. Pro rata distribution is not expected here.

D. **Additional relief available to the Class Members.** The Settlement also includes a provision whereby Guaranteed Rate will adjust to zero all debts of all Persons who fall within the definition of the Settlement Classes resulting from unpaid leads and other costs currently claimed as owed to Guaranteed Rate. See Exhibit C, ¶ 27. The discharge of such debts functions

as a cash equivalent in determining class benefits. *Cullen v. Whitman*, 197 FRD 136, 147 (E.D. Pa. 2000); *In re Lloyd's*, 2002 WL 31663577 (S.D. NY Nov. 22, 2002); *Follansbee v. Discover*, 2000 WL 804690 (N.D. Ill. June 21, 2000); *Ybarrondo v. NCO*, 2008 WL 183714 (S.D. Cal Jan. 18, 2008).

  **E. Class Notice.** Notice was prepared and sent based upon information from Guaranteed Rate's human resource files, a Lexis Nexus search, and the National Change of Address database. The Settlement Administrator worked with the parties regarding details of the mailing and facilitated the mailing of notice packets to Class Members by August 2, 2011. *See* Exhibit B, ¶¶ 5-12; Exhibit C, ¶¶ 3-9. Supplemental notice was sent to eight Class Members on September 27, 2011 (Docs. 57, 59). *See* Exhibit B, ¶¶ 20-25; Exhibit C, ¶¶ 14-19.

  **F. Incentive awards and attorneys' fees and costs.** Subject to approval by the Court, Guaranteed Rate has agreed to pay Plaintiffs five thousand dollars ($5,000) each for their services as Class Representatives, as well as for a complete release of all other claims. Furthermore, subject to approval by the Court, Class Counsel has requested attorneys' fees and costs of two hundred thousand dollars ($200,000).

**III. The Court should approve the Settlement.**

  **A. Standard for judicial evaluation and approval.**

  A court should approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (1) (C). *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *DHL v. Thoroughbred Tech. + Telecom.*, 309 F.3d 978, 986 (7th Cir. 2002); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

### B. Factors to be considered in determining whether a settlement is fair, reasonable, and adequate.

The factors considered are: (1) the strength of the plaintiff's case on the merits compared to the amount of the settlement; (2) the defendant's ability to pay; (3) the likely complexity, length, and expense of further litigation; (4) opposition to the settlement from members of the class; (5) evidence of collusion; (6) opinions of counsel; (7) the stage of the proceedings and the amount of discovery completed at the time of settlement; and (8) the public interest. *Isby*, *supra*, 75 F. 3d at 1198-1199; *GE Capital Corp. v. Lease Resolution Corp.*, 128 F. 3d 1074, 1082 (7th Cir. 1997); *Armstrong v. Bd. of Sch.l Directors*, 616 F.2d 305, 313 (7th Cir. 1980) (for factor (8)). Here, these factors show that the Settlement should be approved.

#### 1. Strength on the merits compared to the Settlement amount.

Generally, the most important factor in determining whether a settlement should be approved is the comparison of the terms of the settlement with the likely results of the litigation. *Hiram Walker*, *supra*, 768 F.2d at 889; *see also Synfuel*, *supra*, 463 F.3d at 653 (citations omitted).

Plaintiffs allege that Guaranteed Rate violated the FLSA, IWPCA, and common law. FLSA litigation is complex and includes possible arguments regarding employees' exemptions from overtime, determining employees' regular rate of pay, and properly calculating overtime with commission pay. 29 C.F.R. § 778.102 and 29 C.F.R. § 778.107 et seq. Similar threshold issues would arise in litigating IWPCA claims. Guaranteed Rate denies any wrongdoing.

In contrast to dealing with the uncertainties of litigation, the Settlement provides a meaningful payment to every Class Member who submits a claim form. When weighed against the merits, the Settlement more than adequately compensates Plaintiffs and the Classes.

### 2. Guaranteed Rate's ability to pay.

In the context of a class-wide settlement, courts typically consider the defendant's ability to pay. *See Hispanics United of DuPage County v. Addison, Illinois*, 988 F. Supp. 1130, 1150 (N.D. Ill. 1997) (Castillo, J.). Ability to pay is not a factor here, and Guaranteed Rate does not contend otherwise.[1]

### 3. The likely costs, complexity, and length of further litigation.

Class actions have a well-deserved reputation for complexity. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). This case is no exception.

Prior to the preliminary approval process, Plaintiffs had two cases pending: a state court action to resolve IWPCA issues and a federal court action to resolve FLSA issues. Litigation here would therefore require activity in concurrent cases on different subjects. Because Guaranteed Rate denies Plaintiffs' claims, extensive discovery would be required as to all of the more than 200 Class Members regarding their employment and wage history with Guaranteed Rate, including whether overtime pay had been withheld or unlawful deduction had occurred.

Litigation of class certification issues would require a significant commitment of time and resources from both parties. In the absence of settlement, a lengthy and expensive trial would be a virtual certainty, followed by an appeal. The Settlement avoids the uncertainty, time, and costs associated with continuing this litigation. The Court should finally approve the Settlement because it will minimize the inevitable costs of future litigation of this matter.

### 4. Opposition.

A low rate of opt outs or opposition reflects favorably on a settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2001) (high acceptance rate "is

---

[1] Publicly available records indicate that Guaranteed Rate is financially stable at this time.

strong circumstantial evidence in favor of the settlements"). No objections or opt outs were filed in opposition to this Settlement. The lack of opposition and requests for exclusion show that the overwhelming majority of the Class Members support the Settlement.

### 5. Absence of collusion.

"Settlement negotiations that are conducted at arm's length and in good faith demonstrate that a settlement is not the product of collusion." *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, * 2 (N.D. Ill. Dec. 10, 2001) (Darrah, J.). The Settlement record proves that the Settlement is not the product of collusion. Plaintiffs and Guaranteed Rate reached this Agreement only after considering: (1) the benefits to the classes; (2) the unfeasibility of individual judgments; (3) the evidence of liability in the case; and (4) the risks, costs, uncertainties, and delays of litigation.

The Settlement is the culmination of extensive negotiation. Settlement discussions began early in the case through telephone conferences, written correspondence, and multiple in-person meetings. The Settlement terms were ultimately agreed upon after an arduous, day-long, formal mediation between experienced counsel and overseen by the Hon. Robert Boharic (Ret.). Subsequently, over a period of several months, the parties exchanged numerous drafts of the Settlement before they agreed upon the now-preliminarily approved terms of the Settlement.

### 6. Opinion of counsel.

Class Counsel believe this Settlement is fair, reasonable, and adequate. Class Counsel have litigated numerous class actions, including wage and hour collective actions. Under these circumstances, Class Counsel's opinion should be given great weight because of their extensive experience in dealing with the myriad and complex issues involved in this case, wage and hour collective actions, and class actions generally. The Court relied on Class Counsel's resumes in appointing the undersigned as Class Counsel at the preliminary approval stage. (Doc. 52-2).

### 7. Stage of proceedings and amount of discovery.

The stage of proceedings and amount of discovery supports final approval. The members of the classes have been identified. Exhibit C, ¶ 3. The parties have compiled necessary discovery and exchanged documents and data sufficient for Plaintiffs' attorneys to evaluate the strength of this case. Plaintiffs have learned how Guaranteed Rate calculated employee work hours, the process by which Guaranteed Rate collected "marketing costs," and details regarding the employment histories of all Class Members.

The law favors early settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *Airline Stewards, Etc. v. Am. Airlines*, 573 F.2d 960, 963 (7th Cir. 1978) ("settlements are entered into because of 'the very uncertainties of outcome in litigation, as well as the avoidance of wasteful litigation and expense'").

### 8. Public interest.

The public interest is best served by ending this case now. Courts have held that a settlement of class action litigation serves the public interest. *Armstrong*, 616 F.2d at 313.

### IV. The Notice satisfied due process requirements.

In accord with the Preliminary Approval Order (Doc. 56), the parties caused the Notice to be mailed to the Classes. Subsequently, the parties sought leave to send Supplemental Notice (Doc. 57), the Court granted leave (Doc. 59), and Supplemental Notice was mailed.

In order to protect the rights of absent Class Members and ensure compliance with Rule 23 (e) (1), the Court must provide the best notice practicable to Class Members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985). Notice by first-class mail is practical when the names and addresses of most of the Class Members are known. *See Manual for*

*Complex Litigation* at § 30.2111; *Mangone v. First USA Bank*, 206 F.R.D. 222, 231-232 (S.D. Ill. 2001) (approving mailed notice to last known addresses of a settlement class with nearly 18.5 million members). Here, the Class Members were ascertainable and notice was sent to them by first-class mail. *See* Exhibit B, ¶ 12; Exhibit C ¶ 9.

Additionally, the content of the notice complied with Fed. R. Civ. P. 23 (c) (2) (B), which requires that notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." Here, the class notice stated those things as well as instructions for affirmatively opting in to the FLSA collective action (Doc. 52-1 at internal Exhibit A).

**V.      The agreed attorneys' fees are appropriate and merit approval.**

Subject to court approval, Guaranteed Rate has agreed to pay fees and costs to Class Counsel in an amount that is reasonable and merits approval. The facts illustrate that there was no collusion, self-dealing, or conflict of interest in the negotiations leading to the parties' agreement concerning these fees. Moreover, the agreed-upon attorneys' fees and costs represent a reasonable percentage of the class benefit here. Class Counsel requests that this Court approve the agreement of two hundred thousand dollars ($200,000) in attorneys' fees and costs.

**A.      Attorneys' fees and costs were properly negotiated.**

When reviewing an agreement regarding attorneys' fees and costs, courts should be cognizant of the "opportunities for collusive arrangements in which defendants can pay the attorneys for the plaintiff class enough money to induce them to settle the class action for too little benefit to the class." *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1397 (9th Cir.

9

1999). Courts should consider whether: (1) attorneys' fees and expenses diminish class relief, and (2) when the parties negotiated or discussed attorneys' fees. *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 322-323 (W.D. Tex. 2007). The instant Settlement satisfies both prongs of this test.

### 1. The requested fees do not diminish the Class benefits.

A court "may award reasonable attorneys' fees and non-taxable costs that are authorized …by the parties' agreement." Fed. R. Civ. P. 23 (h). Where attorneys' fees do not diminish the class benefits, "the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest…." *McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006). *See also Dehoyos*, *supra*, 240 F.R.D. at 322; *Local 56 United Food & Comm. Workers Union v. Campbell's Soup Co.*, 954 F. Supp. 1000, 1005 (D. N.J. 1997).

Here, the parties agreed that the attorneys' fees and expenses would not reduce benefits available to Class Members and that the Class Members would not be required to pay any portion of the attorneys' fees and expenses. There is no conflict between Class Counsel and the Classes, which reduces the need for the Court to assume a fiduciary role in overseeing the requested fee award. *McBean, supra.* Because the attorneys' fees and costs here do not diminish class benefits in any way, the request of Class Counsel should be approved.

### 2. The attorneys' fees were agreed under non-collusive circumstances.

In addition, Class Counsel's attorneys' fees were not negotiated until after the parties had agreed upon the class relief. No collusion was present here.

Absent any danger of collusion, courts award the attorneys' fees and costs negotiated by the parties. *See, e.g., Cummings v. Connell*, No. CIV. S-99-2176 WBS KJM, 2006 WL 3951867, at *2 (E.D. Cal. Nov. 27, 2006). There is a presumption of reasonableness when: (1) attorneys' fees and expenses do not diminish class relief; and (2) the parties did not negotiate or discuss

attorneys' fees until after an agreement was reached between the parties on all other terms of the settlement. *Dehoyos*, 240 F.R.D. at 322-23. That presumption attaches here.

A court should be "reluctant" to substitute its judgment in place of the judgment of the parties. *In re First Capital Holdings Corp. Financial Product Sec. Litig.*, MDL No. 901, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992). Here, the attorneys' fees were agreed only after the completion of negotiations on class relief, were negotiated with a mediator's assistance, and the money will be paid by Guaranteed Rate itself. As the district court explained in *First Capital*:

> The fee was negotiated at arm's length with sophisticated defendants and the attorneys who were intimately familiar with the case, the risks, the amount and value of their time, and the nature of the result obtained for the class. Where there is such arm's length negotiation and there is no evidence of self-dealing or disabling conflict of interest, the Court is reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated ….

*Id.* at *4 (approving $8 million in attorneys' fees negotiated by the parties). *See also Stokes v. Saga Int'l Holidays, Ltd.*, 376 F. Supp. 2d 86, 89 (D. Mass. 2005). "The arm's length negotiation of attorneys' fees under the supervision of a mediator weighs strongly in favor of approval." *McBean*, 233 F.R.D. at 392. *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Courts encourage the litigants to resolve fee issues by agreement. *Lobatz v. U.S. W. Cellular, Inc.*, 222 F.3d 1142, 1149-50 (9th Cir. 2000) (affirming award of fees and expenses to be paid separate from class action settlement where defendant agreed not to oppose request up to negotiated amount). As the Supreme Court has explained, "[a] request for attorneys' fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Because Guaranteed Rate agreed to pay attorneys' fees and costs in addition to the class relief, it had every incentive to pay as little as possible.

### B.     When calculated on a percentage basis, the attorneys' fees are reasonable.

When a common fund approach is used in a class action settlement, Seventh Circuit precedent supports measuring the attorneys' fees and costs as a percentage of the fund. According to that market-based standard, a fee award of one-third of the settlement fund operates as a benchmark. In gauging the total size of the fund, all benefits to the Classes, including the administrative costs and attorneys fees, are aggregated. The requested attorneys' fees here are well within the range of approval.

#### 1.     The requested fees are within the precedential standard for percentage-based fees.

Calculating attorneys' fees as a percentage of the recovery serves "not only as an efficient risk-shifting and litigation-financing device but also as a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome." *Gaskill v. Gordon,* 160 F.3d 36, 363 (7th Cir. 1998). In this Circuit, courts have held that attorneys' fees between one-third, *In re Continental Ill. Sec. Litig.*, 962 F.2d at 572, and two-fifths, *Teamsters Local Union No. 604 v. Inter-Rail Transport, Inc.*, No. 2-CV-1109, 2004 WL768658 at *1 (S.D. Ill. 2004) (Herndon, J.), are reasonable. Here, the negotiated attorneys' fees are appropriate.

A court must make a "reasonable estimate" of the total value of a class settlement. *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d at 333-34. That value does not depend upon Class Member participation; rather, the Classes' "right to share the harvest of the lawsuit upon proof of their identity, ***whether or not they exercise it***, is a benefit…created by the efforts of the class representatives and their counsel." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) (emphasis added). The Supreme Court has rejected arguments that the fee award should be based on a percentage of actually claimed benefits (as opposed to the total value). *Id.* at 477. *See also* Newberg and Conte, NEWBERG ON CLASS ACTIONS, § 14.03 at 14-14 (1992 ed.).

The value of a class settlement includes the funds available to the Classes, the cost of Notice and settlement administration, and attorneys' fees and costs. *Mangone v. First Bank*, 206 F.R.D. 222, 228 (S.D. Ill. 2001). "The Settlement Value includes awarded legal fees and expenses because even where, as here, 'attorneys' fees are borne by defendants and not plaintiffs ... the attorneys' fees nonetheless are a valuable part of the settlement and thus fairly characterized as part of the common fund.'" *In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d 380, 391 FN19 (S.D.N.Y. 2005), *quoting In re Vitamins Antitrust Litig.,* No. 99-197, MDL 1285, 2001 WL 34312839, at *9 (D.D.C. July 16, 2001).

Here, the Settlement value is at least $590,000.00, which includes all funds to pay Class Member claims, the costs of settlement notice and administration, and attorneys' fees and costs. For purposes of determining class benefit, the discharge of former employee's debts operates as cash when quantifying the common fund. *Cullen*, 197 FRD at 147; *In re Lloyd's*, 2002 WL 31663577; *Follansbee*, 2000 WL 804690; *Ybarrondo*, 2008 WL 183714. Applying the standard of this district between one-third and two-fifths (33-40%) of the total, and after subtracting costs, Class Counsel's actual fees of $188,561 are less than 32% of the total class benefit—well within the range of approval. Additionally, this Settlement involves considerable injunctive relief, including changes to Guaranteed Rate's employment practices which benefit Class Members who are current employees of Guaranteed Rate. To the considerable extent that these benefits provide additional value to the Settlement, the percentage of the attorneys' fees relative to the class benefit is reduced even further.

    **C.**    **Attorneys' fees and costs are proper given Class Counsel's efforts.**

The Settlement provides clear results, and the Class Members have overwhelmingly supported the Settlement. The experience, reputation, and ability of Class Counsel supports the

requested attorneys' fees and costs. With their outstanding attorneys and support staff Class Counsel have recovered rightful wages for employees.

In addition, this case presented significant risk to Class Counsel. The case involved complex and difficult questions. A class action is generally viewed as a very complex type of case. *In re Heritage Bond Lit.*, No. 2-ML-1475, 2005 WL 1594403 at *6 (C.D. Cal. June 10, 2005); *In re Omnivision Techn., Inc.*, 559 F.Supp.2d 1036, 1047 (N.D. Cal. 2008).

Class Counsel undertook this case on a contingent basis with the expectation that a favorable result would produce an enhanced fee, was prepared to take this case through trial and/or appeals if that would have been in the best interests of the Classes, and committed substantial resources to the investigation, prosecution, settlement, and supervision of this case. Courts have recognized that class counsel carry "the financial burden of the case, effectively prosecuting it and, by reason of their expert handling of the case, achieving a just settlement for the class." *John* v. *Torrisi*, 8 F.3d 1370, 1377 (9th Cir. 1993). "If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994). Class Counsel should not receive a lesser fee for settling a case quickly. *Steiner v. American Broadcasting Co., Inc.* 248 Fed. Appx. 780 (9th Cir. 2007). All of these principles apply in this case.

**VI.     The incentive awards to Plaintiffs are appropriate.**

Additionally, the Court should approve Guaranteed Rate's agreement subject to court approval to pay five thousand dollars ($5,000) each to Plaintiffs Juanita Omoruyi and Michael Strange. This payment is in recognition of Plaintiffs' roles and participation as Class Representatives, as well as for a complete release of all other claims. Courts routinely award

such "incentive payments" to the persons who assume the special litigation burden of Class Representative and thereby benefit the entire Class. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award to class representative because "a named plaintiff is an essential ingredient of any class action…."); *In re Dun & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366, 367 (S.D. Ohio 1990) (approving two incentive awards of $55,000 and three of $35,000 to five representatives).

**VII.   Conclusion.**

WHEREFORE, Plaintiffs Juanita Omoruyi and Michael Strange respectfully request that the Court enter the parties' agreed final approval order, which is submitted herewith as Exhibit A.

Dated: October 6, 2011                                   Respectfully submitted,

s/Richard J. Doherty
One of Plaintiffs' Counsel
Richard J. Doherty
James M. Smith
Margaret E. Vincent
BOCK & HATCH, LLC
134 North La Salle Street,
Suite 1000
Chicago, Illinois 60602
T: (312) 658-5500
F: (312) 658-5555

J. Mark Moore (*pro hac vice*)
H. Scott Leviant (*pro hac vice*)
Spiro Moss LLP
11377 West Olympic Boulevard,
Fifth Floor
Los Angeles, California 90064
T: (310) 235-2468
F: (310) 235-2456